**FOOD HANDLERS LOCAL 425 OF the AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, Appellee,**

v.

**VALMAC INDUSTRIES, INC., Appellant.**

**No. 75–1199.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1975.

Decided Dec. 16, 1975.

John A. Davis, Pine Bluff, Ark., for appellant.

G. William Baab, Dallas, Tex., for appellee.

Before CLARK, Associate Justice,* and LAY and ROSS, Circuit Judges.

PER CURIAM.

The appellant, Valmac Industries, Inc., fashioned this unbelievably strange situation out of what Shakespeare would call "a quicksand of deceit." The appellee, Food Handlers Local 425 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, gave notice to Valmac on February 28, 1974, that it would elect to terminate its labor contract on June 29, 1974. No new contract was agreed to by the time of the deadline, and thus a strike of employees began on July 1, 1974. Two days prior to the strike the parties had agreed that certain provisions of the old contract would be incorporated into the new one, and negotiations were continued on the others.

Upon reaching oral agreement with the Union on all of the disputed items, Valmac acted as the scrivener in drawing the final agreement. One of the provisions of the old contract that the parties had agreed to continue in the new one was the following dues authorization and check-off provision:

*Section 1.* Collection of Dues:

Upon legal authorization in writing by an employee the company shall deduct from each employee's first pay check of each month the regular union dues and initiation fee.

Despite the agreement of the parties on June 28 to carry forward Section 1 in the same form, Valmac in drawing the contract inserted the following paragraph in lieu of the original provision:

Section 1. Collection of Dues:

Upon legal authorization in writing by an employee, *dated subsequent to the effective date of this agreement,* the company shall deduct from each employee's first pay check of each month the regular union dues and initiation fees. (Emphasis supplied.)

On July 20 when the parties met to sign the new agreement, the Union representatives failed to note that the language of Section 1 had been changed by the addition of the new clause, which would require the Union to secure new check-off cards for dues from all of its members rather than continuing the old check-off cards then in effect. Valmac did not call the change to the attention of the Union representatives. However, in scanning the agreement some other errors were detected and corrected. It was agreed that in order to get the employees back to work quickly, the contract as then drawn would be signed and that any errors in the draft would be corrected subsequently.

The change in Section 1 was not detected by the Union until on August 15th Valmac wrote the Union a routine letter listing the names of the employees who had signed check-off cards under the new agreement. The Union, failing to get the contract reformed in accordance with the original agreement, then filed this suit alleging that Valmac had

* Associate Justice Tom C. Clark, United States Supreme Court (Retired), sitting by designation.

"illegally and unilaterally . . . fraudulently changed Section 1 in violation of the agreement consummated by plaintiff and defendant on June 28, 1974 . . . ."

■ While Valmac in its answer admitted that on June 28 it proposed that Section 1 of the old contract be carried forward into the new one and the Union so agreed, it alleged in its answer that no final agreement on the whole contract was made until July 20, 1974, at which time the Union representatives looked over the proposed form that Valmac had drawn and made no objection to Section 1 as written, including the objectionable clause. The Union representatives claimed that they thought Section 1 was incorporated from the old into the new contract and, in their haste to get the workers back to work, relied on Valmac's representations that the draft included everything agreed upon. At trial Valmac did not offer any testimony whatever, depending on the written contract signed by the parties on July 20th.

Clearly the Union, under the evidence, was entitled to the reformation requested. See *National Union Fire Insurance Company, of Pittsburgh, Pa. v. D & L Construction Company,* 353 F.2d 169, 174 (8th Cir. 1965), *cert. denied,* 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 539 (1966); *Commercial Standard Ins. Co. v. Maryland Casualty Co.,* 248 F.2d 412, 414 (8th Cir. 1957); *Weiss v. Turney,* 173 F.2d 617, 618–19 (8th Cir. 1949).

■ Valmac's cases are entirely inapposite and would require in the instant case the enforcement of the most simplistic form of the parole evidence rule. Indeed, *Lewis v. Lowry,* 322 F.2d 453 (4th Cir. 1963), which Valmac cites, tolls the death knell to Valmac's claim here. The opinion, in reflecting upon "pretensive agreements," adopts the language of an earlier opinion in the same case, 295 F.2d 197, 199 (1961), that states the Un-

ion's case here precisely. In short, it is the real agreement that should prevail. Nor do we find fault with the assessment of the damages as the total of the dues lost by the Union because of Valmac's action. See *Local 127 Shoe Workers v. Brooks Shoe Mfg. Co.,* 298 F.2d 277 (3d Cir. 1962); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957); *NLRB v. Ogle Protection Service, Inc.,* 444 F.2d 502, 504 (6th Cir. 1971). As to Valmac's claim of a windfall to its employees, the opposite seems to be the law. See *Schlesinger v. Building Service Employees International Union, Local 252,* 367 F.Supp. 760, 765 (E.D.Pa.1973); *Local 9 Operating Engineers v. Siegrist Const. Co.,* 458 F.2d 1313, 1315–16 (10th Cir. 1972). Valmac also argues that the damages should be reduced because the Union made no effort to collect the dues. It is clear that it is the federal law that controls, and thus the Union was not obliged to follow Arkansas law to mitigate the damages resulting from Valmac's breach. See *Textile Workers Union v. Lincoln Mills, supra.* Any reduction would be inconsistent with the policy of the National Labor Relations Act because it would encourage the very conduct the Act sought to discourage—"bad faith" bargaining.

Finally, although the Supreme Court, as Valmac says, held in *Alyeska Pipe Line Service Company v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), that attorney fees would not generally be recoverable unless provided by statute, Valmac has failed to note the exception carved out by the Court in the same opinion, i. e., that the general rule has no application where "bad faith" conduct is present, as it is here. *Id.* at 258, 259, 95 S.Ct. 1612.

In conclusion, Valmac's action is reminiscent of Scott's adage: "Oh, what a tangled web we weave when first we practice to deceive." [1]

Affirmed.

---

1. Scott, *Marmion,* Canto VI, st. 17.