### In re CROUTHAMEL POTATO CHIP COMPANY, Debtor.

Bankruptcy No. 79–01939G.

United States Bankruptcy Court, E. D. Pennsylvania.

Oct. 31, 1984.

See also, Bkrtcy., 43 B.R. 937.

William J. Einhorn, Kent Cprek, Sagot & Jennings, Philadelphia, Pa., for claimant, Intern. Ass'n of Machinists and Aerospace Workers Local 1092 and Affected Employees.

Michael H. Reed, Barbara H. Sagar, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for trustee of Crouthamel Potato Chip Co., Eugene C. DiCerbo.

Eugene C. DiCerbo, West Chester, Pa., Trustee.

Marvin Krasny, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for debtor, Crouthamel Potato Chip Co.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The predominant issue in this case is whether employees' holiday pay allowable under a collective bargaining agreement (which has not been assumed by a chapter 7 debtor) is entitled to priority status under 11 U.S.C. § 507(a)(1) or (a)(3) of the Bankruptcy Code ("the Code") when the holiday falls within the postpetition period during which period the debtor's employees had not worked. For the reasons expressed below, we find that the Code does not accord the holiday pay in question priority status.

The facts of this case are as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Code on October 16, 1979, although the case was converted to a chapter 7 proceeding three years later. On the day of the filing of the petition the debtor dismissed its employees who were then employed under a collective bargaining agreement. Under the agreement these workers were entitled to holiday pay for the Thanksgiving holiday of 1979 and the following Friday.[2] During the postpetition period the debtor did not assume the contract.

On behalf of the debtor's employees, the International Association of Machinists and Aerospace Workers Local 192 ("the Union"), filed a proof of claim for several thousand dollars in which it asserted that said claim was entitled to priority status. The trustee objected to the claim, contending that the Union had no standing to file the proof of claim and that the Code does not afford such a claim priority status. Although the amount of the claim is in dispute, the parties have agreed to resolve that issue through stipulation, and thus we need only resolve the question of the Union's standing and the priority of the claim.

■ The threshold issue is the trustee's assertion that the Union has no standing to file a proof of claim on behalf of the employees it represents. We find that this issue has been resolved in favor of the Union in *In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir.1984). In *Altair* the court addressed the question of whether a labor union was a creditor eligible to sit on a creditor's committee. The court held in favor of the union. Since a labor union is a creditor under the Code it is consonant with *Altair* that such an entity may file a proof of claim on behalf of the individuals it represents. *Cf., Nathanson v. N.L.R.B.*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (Where the N.L.R.B. had obtained prepetition an order directing the debtor's payment of wages to its employees, the N.L.

---

**1.** This opinion constitutes the findings of fact and conclusions of law requested by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** In pertinent part the collective bargaining agreement stated as follows:

> Holidays will be paid to employees laid off or on non-occupational sickness or disability absence, providing the employee had worked sometime within forty-five (45) working days prior to the holiday. Employees on occupational disability or occupational illness leave will be paid holiday [sic], should the holiday occur within twelve (12) pay months from date of such leave.

Article 9.8. Another provision stated that Thanksgiving and the following Friday were paid holidays.

R.B. was a creditor entitled to file a proof of claim under the Bankruptcy Act of 1898).

In moving to the predominant issue under discussion we note that 11 U.S.C. § 365(g) of the Code provides the general rule that the rejection of an executory contract of the debtor constitutes a breach of that contract which is deemed to have occurred immediately prior to the filing of the petition if the contract has not been assumed under § 365 or under a plan confirmed under chapter 9, 11 or 13 of the Code. § 365(g). Although the trustee took no affirmative action to assume or reject the contract, § 365(d)(1) states that the contract is deemed rejected through such inaction sixty days after the entry of an order for relief in a chapter 7 case, which period began to run in the case at bench on the entry of the order converting the case from chapter 11 to chapter 7.[3] Since the sixty day period from the conversion date has expired, the contract is deemed rejected and all damages are deemed incurred immediately prior to the filing of the petition.

Under the design of the Bankruptcy Code, the general unsecured prepetition creditors of a chapter 7 debtor share ratably in the distribution of the estate but for those creditors who have borne the burden of proving their entitlement to a priority in distribution. 11 U.S.C. § 726(a); *In re I.J. Knight Realty Corp.*, 242 F.Supp. 337, 339 (E.D.Pa.1965) (discussing the burden of proof under the priority section of the prior bankruptcy statute, the Bankruptcy Act of 1898), *aff'd*, 370 F.2d 624 (3d Cir.1967), *rev'd on other grounds*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751, (1968). These priority creditors, of course, share ratably among themselves in the distribution of the estate prior to the participation of the general unsecured creditors. *Id.* Thus, unless the Union has successfully carried the burden of proving its entitlement to a priority, it will receive only its share of any distribution allocable to general, unsecured creditors.

■ The Union first asserts that the claim for holiday pay is entitled to priority since it is an administrative expense allowed under § 503(b) of the Code. 507(a)(1);[4] 11 U.S.C. § 503(b). The Union is apparently relying on that portion of § 503(b) which states that administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." § 503(b)(1)(A). This quoted language expressly limits the priority to "services rendered after the commencement of the case." In the proceeding at bench no services were rendered by the employees after the filing of the petition, and thus the Union claim is not an administrative expense under § 503(b)(1) and does not have priority status under § 507(a)(1). Having reached this conclusion, we need not address the question of whether the employees would be entitled to a priority for payment on a postpetition holiday if the employees had worked for the debtor immediately before and after the holiday at issue. *Cf., Cramer v. Mamoth Mart, Inc.* (In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir.1976) (the court addressed the issue of whether a postpetition termination of the services of a debtor's employees entitled them to priority status for their claim for severance pay where such pay is calculated on the length of time a particular employee had served the debtor).

The Union's second basis for contending that its claim is entitled to priority status is

---

**3.** (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1).

**4.** (a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

§ 507(a) (in pertinent part).

§ 507(a)(3). In pertinent part § 507(a) states as follows:

(a) The following expenses and claims have priority in the following order:

(1) * * *

(2) * * *

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

\* \* \* \* \* \*

This provision only accords priority to wages, salary or commissions which are *earned* within the ninety day period immediately prior to the filing of the petition. Although under § 365(g) the entire claim is deemed to have *arisen* immediately prior to the filing of the petition, only that portion of the claim which is *earned* is allowable as a priority. Since the employees in the action at bench did not work immediately before or after the holiday in question, we cannot say that the employees "earned" the pay for that holiday. Thus, the Union's claim is not allowable as a priority under § 507(a)(3).

Accordingly, we will enter an order sustaining the trustee's objection to the priority status of the Union's claim.