**In re U.S. TRUCK COMPANY, INC., Debtor.**

**U.S. TRUCK COMPANY, INC., Plaintiff,**

**v.**

**TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE, Defendant.**

Bankruptcy No. 82–03561–R.
Civ. A. No. 87–72319.

United States District Court,
E.D. Michigan, S.D.

May 26, 1988.

Patrick A. Moran, Simpson & Moran, Birmingham, Mich., for plaintiff.

James P. Hoffa, Hoffa, Chodak & Robiner, Detroit, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

PHILIP PRATT, Chief Judge.

This appeal involves the final stages of a complicated Chapter 11 proceeding which has been litigated in the bankruptcy court of the Eastern District of Michigan. On February 4, 1985, this court confirmed the Fifth Amended Plan of Reorganization in this matter. As part of this plan, an order was entered providing that for the purposes of confirmation an unliquidated claim of the National Freight Industry Negotiating Committee (Committee) would be estimated at $2,000,000.00. The Committee's claim has been litigated before the bankruptcy court, which awarded the Committee over $1,500,000.00 in damages stemming from the rejection of a collective bargaining agreement. Now before the court is the appeal of defendant and reorganized debtor, U.S. Truck, Inc. (U.S. Truck). Among other contentions, U.S. Truck argues that the Committee does not have standing to make the claims upon which the damage award is based. U.S. Truck also argues that when a collective bargaining agreement is rejected because of the imminent failure of the debtor-in-possession, damages for lost wages after the time of rejection may not be recovered. Finding that these contentions do not warrant reversal of the judgment of the bankruptcy court, the court affirms the damages award as to the individual employees, but reverses as to the recovery of union dues.

This bankruptcy matter has a long history which need not be repeated in detail here. For the purposes of the matter now before the court, the following facts are relevant.

On June 11, 1982, U.S. Truck filed a petition for relief under Chapter 11 of the Bankruptcy Code. U.S. Truck operated a trucking company primarily engaged in the intrastate shipping of parts and supplies for the automotive industry. On July 15, 1982, U.S. Truck sought to reject its collective bargaining agreement with the International Brotherhood of the Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union). The debtor alleged that it could no longer survive if it were required to comply with the terms of the National or Master Bargaining Agreement (Agreement). In granting this petition the bankruptcy court concluded:

> Testimony presented at the ... hearings established that the debtor is incurring staggering losses; that measures undertaken to reduce expenses have proved insufficient to reverse the loss trend; that the debtor cannot survive given the wage requirements of the collective bargaining contract currently in effect. The Court therefore finds that rejection of the labor contract is absolutely necessary to save the debtor from collapse.

Memorandum Opinion and Order at 8 (Dec. 6, 1982) (Woods, J.).

Subsequently, the debtor and the Union entered into negotiations and in January of 1983 reached an agreement on the terms of a new labor contract. The new agreement contained several revisions including a change to owner-operated trucks and a ten percent reduction in the wage rate for employees. That contract was scheduled to expire in March of 1985, when the National or Master Agreement was to be renegotiated. Each participating local union agreed to recommend approval of the new contract. On January 11, 1983, the local union membership approved the new labor agreement by a vote of 90 to 39. On April 14, 1983, the Joint Area Rider Committee of the Union reached a deadlock on the validity of the new contract. Nonetheless, in January of 1983, the local union and the debtor implemented the terms of the new labor contract.

In addition to the rejection of the contract, U.S. Truck took various other measures to reduce costs. It eliminated certain positions and contracted their functions to other companies. New lease agreements were also entered into. The new labor contract, work force composition and favorable lease agreements between the debtor and other involved companies enabled the debtor to reverse the trend of overwhelming losses.

In August of 1984, the Committee filed an Amended Proof of Claim for damages which allegedly resulted from the rejection of the Agreement in the amount of $5,002,-321.00. This claim was filed using Form No. 21. This form is a proof of "Multiple Claims" for wages, salary or commissions to be completed by an agent for the claimants. Attached to the submitted Form No. 21 were Form Nos. 21A and 21B which listed the names of employees the Committee was acting for, along with the amounts claimed by these employees.

After the confirmation of the Fifth Amended Plan by this court, the Committee's rejection damages claim was tried before Judge Rhodes of the Bankruptcy Court. The trial and related motions consumed 11 days, generated over 1,200 pages of transcripts and concluded in a detailed 62–page opinion. *In Re U.S. Truck*, 74 B.R. 515 (Bankr.E.D.Mich.1987). The court held that the Committee had standing to represent the members of the Union employed by U.S. Truck. Oral Ruling (May 7, 1986). The court disallowed rejection damages for any person not listed as a claimant on Form No. 21 and its attachments. *Id.* at 17. The court further held that the rejection damages for lost wages of the union members who continued to work for U.S. Truck after rejection were equal to the difference between the wage levels in the Agreement and the wages actually paid after the rejection. 74 B.R. at 537. The court also held that the contracting out of certain positions violated the Agreement, and those claimants whose positions were eliminated were entitled to the wages they would have earned under the Agreement had they continued to work for U.S. Truck. *Id.* at 535–36. As to other employees who

were released, but were not replaced by a contractor, no rejection damages were allowed. *Id.* at 536.

Now before the court is defendant U.S. Truck's appeal from Judge Rhodes' opinions. The questions presented in this appeal may be summarized as follows:

1) Whether the Committee has standing to present the individual claims of the Union's members in a bankruptcy case after rejection of a collective bargaining agreement.

2) Whether lost wages may be recovered as rejection damages as a matter of law where the wages were lost after the rejection of the collective bargaining agreement.

3) Whether lost wages may be recovered as rejection damages, where the wages were lost after the rejection of a collective bargaining agreement, and without rejection, the rejecting company would have terminated all employment.

4) Whether 11 U.S.C. § 502(b)(7) bars the recovery of lost wages where the wages were lost more than one year after the rejection of the collective bargaining agreement.

5) Whether rejection of the Agreement terminated the provision authorizing U.S. Truck to deduct Union dues from the employees wages and whether U.S. Truck waived its right to refrain from making such deductions.

To the extent that these arguments require examination of factual findings by the court below, those findings may only be overturned if they are clearly erroneous. Bankr.R. 8013. The district court must independently reach the ultimate legal conclusions adopted by the bankruptcy judge on the basis of the facts found. *In the Matter of Bufkin Brothers, Inc.*, 757 F.2d 1573, 1577–78 (5th 1985).

### I.

The court first turns to the threshhold issue of the Committee's standing to assert the Union members' claims.

Federal courts are courts of limited jurisdiction. Among the restrictions on jurisdic-

tion is the requirement that all disputes be actual cases or controversies. U.S. Const. art. 3, § 1. One element of an actual case or controversy is that a litigant have "standing" to challenge the actions sought to be adjudicated in the lawsuit.

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

*Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). A party may not convert the judicial process into "no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973).

U.S. Truck contends that once the Agreement was rejected, the only claims that arose were claims under the Bankruptcy Code. Therefore, U.S. Truck argues, the Committee had no standing to raise the individual claims of its members. According to U.S. Truck, the individual members of the Union should have filed claims.

■ A collective bargaining agreement is an "executory contract" within the meaning of § 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a), and is therefore subject to rejection by the debtor-in-possession under appropriate circumstances. *N.L.R.B. v. Bildisco,* 465 U.S. 513, 517, 104 S.Ct. 1188,

1191, 79 L.Ed.2d 482 (1984). Section 365(g) provides that "the rejection of an executory contract ... of the debtor constitutes a breach of contract ... if such contract ... has not been assumed under this section or under a plan confirmed under Chapter 9, 11, 12 or 13 of this title, immediately before the date of the filing of the petition." 11 U.S.C. §§ 365(g), 365(g)(1). This breach of contract claim arises in the same manner as a breach of contract claim filed previous to the petition: "A claim arising from the rejection, under section 365 of this title ..., of an executory contract ... of the debtor that has not been assumed shall be allowed ... the same as if such claim had arised before the date of the filing of the petition." 11 U.S.C. § 502(g). Thus, while any suit for rejection damages "may be had only through administration of the claim in bankruptcy," *Bildisco, supra* at 530, 104 S.Ct. at 1198, the claim is to be treated as if it had occurred before the bankruptcy.[1]

■ The constitutional question presented here is who has standing to bring the claim for rejection damages. The court holds that the Committee has standing to assert the claims of its members. First, it is clear that a union may bring a claim in bankruptcy. In bankruptcy, a creditor is an "entity that has a claim against the debtor." 11 U.S.C. § 101(9). An "entity" is defined as "a person, estate, trust [or] governmental unit." 11 U.S.C. § 101(14). A "person" is defined as an "individual, partnership, [or] corporation." 11 U.S.C. § 101(35). Finally, a corporation includes an "unincorporated company or association." 11 U.S.C. § 101(8)(A)(iv). As an unincorporated association, a union has the capacity to assert a claim. *In re Altair Airlines,* 727 F.2d 88, 90 (3d Cir.1984). *See also Matter of Liberal Market, Inc.* 11 B.R. 742, 744 (Bankr.S.D.Ohio, 1981) (order-

---

1. The *Bildisco* Court held that "the filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again." *Bildisco, supra,* at 532, 104 S.Ct. at 1199. The court therefore concluded that the National Labor Relations Board could not bring an unfair labor practice against the rejecting debtor under § 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d): "We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d)." This narrow ruling does not prohibit the court's conclusion here that the Committee has not been precluded from representing its members. *See infra.*

ing union representation on Creditors' Committee without discussion of issue).

The remaining question is whether the Committee may assert a "claim" for damages suffered by its members for rejection of a collective bargaining agreement. A "claim" is defined in the Bankruptcy Code as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contigent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(4). "The existence of a 'right to payment' is determined, obviously, by the law governing the transaction between the alleged claimant and the debtor." *Altair Airlines*, 727 F.2d at 90. *See also In Re Continental Airlines Corp.*, 64 B.R. 865, 871 (Bankr.S.D.Tex.1986) ("The legal standards for measuring the value of a bankruptcy claim for contract breach are therefore the same as those which would be applied if the bankruptcy had not occured.")

Under this reasoning, the Committee has a bankruptcy "claim" for breach of a collective bargaining agreement. Such a claim is predicated upon § 301 of the Labor Management Relations Act:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties ...

29 U.S.C. § 185(a). In such suits, the labor organization may assert the claims for its members:

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States.

29 U.S.C. § 185(b). Because the Committee would have been entitled to bring an action for breach of the Agreement had there been no bankruptcy, it was entitled to assert a claim for its members in the bankruptcy court. *In Re Crouthamel Potato Chip Co.*, 43 B.R. 934 (Bankr.E.D.Penn. 1984).[2]

U.S. Truck argues that this analysis is flawed and that *Altair* and *Crouthamel* were wrongly decided. As support, they point to *In Re Continental Airlines*, 64 B.R. 874 (Bankr.S.D.Tex.1986). The court there held that the unions could not bring an action in bankruptcy court on behalf of their members. *Continental Airlines*, however, is inapposite. First, that case deals with the right of various unions to bring claims predicated upon the Railway Labor Act, 45 U.S.C. § 151 *et seq.* The court held that because the unions' claims were a "minor" dispute, the RLA could not support a claim by the unions unless the individual employees conferred authority on the unions to resolve grievances. Because the unions could not show express authority, and because the unions had urged their members to file individual proofs of claim, thereby undercutting their position that they had conferred authority on the union, the court held that no such authority had been granted.

---

**2.** The court recognizes that personal rights, such as wages, may be enforced directly by employees. *E.g., Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507 (9th Cir.1978). A labor union may also bring such an action. If employees are required to exhaust grievance procedures contained in the collective bargaining agreement, however, they can only bring an action against the employer if they also bring an action against the union for breach of its duty of fair representation. *See Hines v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

Here, the claim is predicated upon § 301 of the LMRA, not the RLA. The LMRA contains no distinctions between "minor" and "major" disputes. As noted above, a union is statutorily authorized to bring actions for breach of a collective bargaining agreement, and no limitation is made as to the type of dispute upon which a claim may be based.

Furthermore, the *Continental Airlines* decision was based in part on the unions' failure to record individual claims by listing the amounts due to each employee:

> Finally, as a matter of bankruptcy policy, the Unions' claims must be dismissed due to the gross inequities they would create. The Unions have candidly aknowledged (1) their claims were filed *en masse*, with no attempt to identify the individuals allegedly entitled to recover on each claim or the value of each individual's entitlement; (2) the various claims by each Union may duplicate or overlap each other; (3) the Union claims may duplicate or overlap the claims filed by the individuals; and (4) the Union claims are subject to unspecified set-offs, such as interim earnings and mitigation. As stated in the slightly different context of bankruptcy claims asserted as a class action, "claims against a bankrupt estate may not be treated *en masse* but instead must be treated on its own merits." *In Re Woodmoor Corp.*, 4 B.R. 186 (Bankr.D. Col.1980). Likewise, here the Unions'

claims are antithetical to an overriding bankruptcy policy requiring an individualized analysis of all claims.

*Id.* at 880–81. Here, there is no such danger. By filing Form No. 21 and appending to it forms which list the individual employees and their claims, the Committee avoided any uncertainty as to the value of the individual claims. In addition, the Committee represented all of the claims made by its employees and no individual employees made claims.[3]

The court concludes that the Committee has standing to assert the claims arising from the rejection of the Agreement by U.S. Truck. The court now turns to the question of whether lost future wages may be awarded as rejection damages under the facts presented by this appeal.

## II.

A collective bargaining agreement is an "executory contract" which is subject to rejection. 11 U.S.C. § 365(g); *Bildisco, supra.* Once an executory contract is rejected, the contract is treated as if it were breached. This breach is held to have occurred immediately prior to the filing of the petition in bankruptcy. 11 U.S.C. §§ 365(g), 365(g)(1). The damages flowing from this "breach" are then considered as unsecured debts that are treated identically to other pre-petition unsecured debts. 11 U.S.C. § 502(g); Collier on Bankruptcy Para 502.07 (15th Ed.1987). In short,

---

3. U.S. Truck argues that in order to file Form No. 21, the Committee must file an authorization from each individual permitting the Committee to act as agent. Bankr.R. 2019(a). Bankr.R. 2019(b), however, permits the court to examine any "other authorization, and any claim or interest acquired by any person or committee in contemplation or in the course of a case under the Code and grant appropriate relief." Here, the bankruptcy court apparently asserted this authority, finding that the Committee had authority to act for its members under both § 301 of the LMRA and under Art. XIV, § 3 of the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. This article provides:

> Every member, by virtue of his membership in the Local Union, authorizes his Local Union to act as his exclusive bargaining representative with full and exclusive power to

execute agreements with his employer governing terms and condition of employment and to act for him and have final authority in presenting, processing and adjusting any griavance, difficulty or dispute arising under any collective bargaining agreement or out of his employment with such employer in such manner as the Local Union or its officers deem to be in the best interests of the Local Union, all subject to Article XII and other applicable provisions of the International Constitution relating to such matter.

The court agrees with U.S. Truck that a "class action" should not be permitted in bankruptcy. *E.g., In Re Standard Metals Corp.,* 817 F.2d 625 (10th Cir.1987). Here, however, the claim is not being made by a class representative, but by an authorized agent who has specifically described the persons and amounts of the claims involved. This proof of claim cannot be characterized as a "class action."

§ 502(g) "gives entities injured by the rejection of an executory contract or unexpired lease, either under § 365 or under a plan or reorganization, a pre-petition claim for any resulting damages, and requires that the injured entity be treated as a pre-petition creditor with respect to that claim" H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 1st Sess. 65 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5851, 6310. In the lease agreement context, for example, if the debtor rejected the lease agreement and made no payments on the lease, the lessor would become an unsecured creditor for the sum of all remaining lease payments.

■ The collective bargaining agreement situation differs from the normal executory contract. Under most agreements, including the Agreement here, there is no guarantee of employment. U.S. Truck contends that because it was not obligated to pay any future wages, rejection damages may not include the future wages if employment continues.

The court rejects this contention on the basis that the logic in *Bildisco* extends to lost future wages. In *Bildisco*, the Court referenced the types of damages recoverable after rejection:

> Section 502(c) provides that any contingent or unliquidated claim shall be estimated for the purposes of settling a bankrupt estate. Under this provision losses occasioned by the rejection of a collective bargaining agreement must be estimated, including unliquidated losses attributable to fringe benefits or security provisions.

465 U.S. at 530 n. 12, 104 S.Ct. at 1198 n. 12. Certainly, if future fringe benefits, which may only arise if the debtor continues to employ persons receiving these benefits, may be recovered, then future lost wages should also be recoverable.[4] Thus, this court concludes that lost future wages stemming from rejection of a collective bargaining agreement should be considered unsecured debts.

■ In a similar vein, U.S. Truck contends that because the bankruptcy court found that U.S. Truck would have failed had the collective bargaining agreement not been rejected, its employees are not entitled to any lost future wages as rejection damages. Absent rejection, U.S. Truck argues, the employees would have received no wages. Therefore, they are not entitled to these wages as rejection damages.

In support, U.S. Truck again points to *In Re Continental Airlines*, 64 B.R. 865 (Bankr.S.D.Tex.1986). As noted above, in that case, the company rejected the collective bargaining agreement after a finding by the bankruptcy court that the company would go out of business if the collective bargaining agreement remained in effect. The court first held that the "legal standards for measuring the value of a bankruptcy claim for contract breach are ... the same as those which would be applied if the bankruptcy had not occurred." *Id.* at 871. The court then held that the measure of damages under an RLA breach of contract damages was equivalent to the measure of damages under § 301 of the LMRA, and went on to examine that body of law.

"As a matter of federal labor law, employees subject to a collective bargaining agreement are not entitled to lost future wages as damages under such an agreement when the employer ceases operations, unless the agreement guarantees future employment." *Id.* at 872. The case further held that federal labor law "does not require an award of damages for time periods during which no work would have been available in any event, even where an employee was discharged in violation of the NLRA." *Id.* These propositions are not controversial. *See* cases cited in *Continental Airlines*, *supra*, at 872. The court went on to analogize to those cases:

> pre-petition debt would also be increased by claims for future fringe benefits. The Supreme Court did not see this as an obstacle in *Bildisco*.

---

**4.** U.S. Truck argues that allowing damages for lost future wages would increase pre-petition debt, and therefore should not be allowed. This argument fails for the same reason cited here:

As noted above, but for the rejection of the collective bargaining agreement, Continental would have ceased operations and pilots would have had no cognizable claims for lost future wages because the rejected contracts did not obligate Continental to provide employment, but rather only established rates of pay and working conditions for any employment which was available ... But for the Court's rejections of the collective bargaining agreement at issue here, Continental would have gone out of business and pilots represented by the ALPA could not have claimed lost future wages as damages, because the agreements did not guarantee future employment.

*Id.* at 872.

This analogy is not persuasive, and this court reaches an opposite conclusion. If U.S. Truck had ceased operations and liquidated, the Committee would have had no claim against it for future lost wages of its employees. *E.g., Abbington v. Dayton Malleable, Inc.,* 561 F.Supp. 1290 (S.D.Ohio 1983), *aff'd mem.* 738 F.2d 438 (6th Cir. 1984). U.S. Truck did not, however, choose this option. Rather, U.S. Truck decided that it was in the interest of the creditors and the corporate owners to continue operations. This decision required that it continue to employ workers. In order to make the company economically viable, however, it paid these workers a wage rate lower than that contemplated by the Agreement. The analogy, then, should be to cases where a company unilaterally breaches the wage obligations of a collective bargaining agreement. In such a situation, the union or its employees may bring an action under § 301 to recover the lost wages. *See UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (union may bring action to recover members' lost wages or vacation pay guaranteed under collective bargaining agreement); *Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371 (11th Cir.1983) (employees stated claim upon which relief could be granted where employer shipping company unilaterally reduced hauling rates guaranteed under collective bargaining agreement); *New Mexico District Council of Carpenters v. May-hew Co.,* 664 F.2d 215 (10th Cir.1981) (union may sue to recover difference between wages paid and wage rate guaranteed under collective bargaining agreement).

The *Continental Airlines* court also argued that federal labor law "does not require an award of damages for time periods during which no work would have been available in any event, even where an employee was discharged in violation of the NLRA." 64 B.R. at 872. On this basis, the court held that the employees could not recover future lost wages because there would have been no work available had rejection not occurred.

This holding is suspect for reasons similar to those cited above. The cases cited by the court involve the reinstatement and backpay award for employees who were discriminated against. In such situations, the employer may show that even absent the discrimination, employment would have been unavailable to the employee because of, for example, the seasonal nature of the employer's activity. If the employer makes an adequate showing, the employee is not entitled to backpay for those periods for which employment was unavailable. *E.g., N.L.R.B. v. United Contractors, Inc.,* 614 F.2d 134 (7th Cir.1980); *N.L.R.B. v. Columbia Tribune Publishing Co.,* 495 F.2d 1384 (8th Cir.1974). In effect, these courts look to the actual operations of the employer to determine what employment the employee would have had absent discrimination.

That context is not analagous to the situation here, and to the extent that it is, the analogy supports a lost future wages award. U.S. Truck and its trustee determined that the interests of the creditors and the debtor were best served by continued economic activity. Therefore, a decision was made that employment should continue during the period of time that the claimed damages accumulated. This situation of continuing employment has no relation to a context where no employment was available during specific parts of a company's annual business cycle. In fact, to the extent the court should look to the actual operations of the company to determine

what damage award is appropriate, the continued employment of part of U.S. Truck's workforce militates in favor of finding damages for pay lost through the 10–percent reduction in wages.

Furthermore, the court agrees with the bankruptcy court that U.S. Truck's scenario is entirely too speculative. The court below held that the reasoning of the court in *Local 461, Int'l Union of Electrical, Radio and Machine Workers v. Singer Co.*, 540 F.Supp. 442 (D.N.J.1982) was applicable here. In that case, the defendant-employer and the plaintiff-union modified a collective bargaining agreement then in force. Under the terms of the modified agreement, the employer was to invest two million dollars to modernize the plant and use its best efforts to procure defense contracts. In exchange, the union made certain concessions, or "give-backs," including reductions in paid holidays, rest periods, paid hours spent on union business, and wage increases. When the employer did not invest the two million dollars and instead closed the plant, the union brought suit for breach of the modified agreement under § 301 of the LMRA. The employer argued that the union would not recover damages because even had the investment been made, the employer still would have closed the plant. Because no employment would have been available whether the money had been invested or not, no damages claim arose.

The court rejected this argument. First, the court held that the contract was not contigent on a particular level of market demand. The court also rejected the argument as speculative:

> Defendant would have this Court project what *might* have happened had Singer expended the $2 million and conclude that the plant would have closed in any event by the end of 1982. Singer contends that its efforts would have been in vain, but plaintiffs argue that had the money been spent and had defense work been secured the plant would have undergone a resurgence. It is plain that this Court cannot now divine through some occult device what might have been had [Singer] fulfilled its obligations.

> This court cannot measure damages in such a speculative manner.

*Id.* at 450.

Here, the court cannot say what would have happened had the company decided to liquidate. A buyer might have been found, for example, who would have continued the operations of U.S. Truck. Rather than speculate as to what might have occurred, the court believes it is the better course to look at the actual events. Because U.S. Truck continued to employ workers, these workers should be an unsecured creditor for the difference between what they were paid and the amounts contemplated by the Agreement.

### III.

U.S. Truck contends that the court below erred by not limiting the damages award for rejection of the Agreement to those damages suffered by the Union members during a one-year period after the rejection.

According to 11 U.S.C. § 502:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to such a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

\* \* \* \* \* \*

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or

such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates ...

The application of this section to the case at bar raises two issues: (1) whether the failure to assert this limitation as an objection constitutes a waiver of the limitations; and (2) whether this section applies to collective bargaining agreements.

Assuming *arguendo* that this limitation cannot be waived, the court holds that § 502(b)(7) does not apply to collective bargaining agreements. The term "employment contract" is not defined in the Bankruptcy Code. Nor does the legislative history state what was meant by this term. The relevant reports merely state that this provision "tracks" the limitation on recovering damages for breach of a lease agreement. 1978 U.S.Code Cong. & Admin. News 5787, 5848–51, 6307–6310. In the Report of the Commission on the Bankruptcy Laws of the United States, which originally proposed this exception, and whose draft was adopted almost word-for-word, the rationale for this section was explained:

> This clause is intended principally to apply to long-term contracts providing substantial compensation to management executives of corporate debtors. It also applies to the termination of contracts obligating payment for future athletic, entertainment, or other services. It is not intended to apply to pension contracts, which if excessive in amount in comparison with past services rendered, *e.g.*, by an insider of a debtor corporation, might be reduced in allowability on unconscionability grounds.

Commission Report, H.R.Doc. 137, 93rd Cong., 1st Sess., Part II at 106 (1973), *reprinted in* Collier on Bankruptcy, 2 Appendix (15th Ed.1987).

Courts have reached different conclusions on this issue. *Compare In Re Cortland Container Corp.*, 30 B.R. 715 (Bankr. N.D.Ohio 1983) and *In Re Continental Airlines*, 64 B.R. 865 (Bankr.S.D.Tex.1986) (collective bargaining agreement is "employment contract") *with Matter of Gee &*

*Missler Services*, 62 B.R. 841 (Bankr.E.D. Mich.1986) (not employment contract). In *Cortland,* the court held that employees "have a contract-based right to sue for breach of collective bargaining agreement (sic)." 30 B.R. at 717 n. 1. The court concluded that a collective bargaining agreement was an "employment contract" within the meaning of § 502(b)(7). "To hold otherwise would create an artificial distinction unwarranted by bankruptcy law provisions between employers with union employees and employers with nonunion employees." *Id.* at 717.

In *Continental Airlines*, the court disputed the relevance of the Report of the Commission cited above:

> In that Report, a *commission* (not the Congress) described a provision similar to what became Section 502(b)(7) as "principally" (not exclusively) intended to apply to long-term management contracts, and to the termination of contracts for future "athletic, entertainment or other services." The language under discussion itself indicates that the commission did not intend the cap provision to apply *only* to such contracts. Moreover, the report in question is *not part of the legislative history of the 1978 Bankruptcy Code at all*, but is a report of a national commission on bankruptcy which concluded its proceedings five years before the 1978 Code was enacted. As enacted, § 502(b)(7) contains no limitations to "management," "entertainment," or "sports" contracts. The legislative history of the 1978 Code reflects only an intention to track a similar provision on leases, which had placed a cap on the damages which might be claimed for the rejection of a lease to prevent unjust enrichment of a lessor.

64 B.R. at 873 (emphasis in original).

In *Matter of Gee & Missler Services*, 62 B.R. 841 (Bankr.E.D.Mich.1986), the court reached an opposite conclusion. The court cited *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944) for the proposition that collective bargaining agreements result in a "trade agreement" rather than an employment contract, cre-

ated by collective bargaining. "The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone." *Id.* at 844. In *J.I. Case,* the Supreme court determined that preexisting individual contracts could not defeat a company's obligation to bargain collectively once the company became a union shop.

The *Gee & Missler* court also criticized the decisions in *Cortland* and *Continental Airlines.*

> These cases, however, are not persuasive. In *Cortland,* the court held that a collective bargaining agreement is an employment contract because "[t]o hold otherwise would create an artificial distinction unwarranted by bankruptcy law provisions between employers with union employees and employers with non-union employees." 30 B.R. at 717. However, this *ratio decidendi* begs the question. The question is not whether union and nonunion employees should be treated in the same manner, but whether a collective bargaining agreement is an employment contract. The opinion also fails to disclose whether the court was aware of the cases that hold that a collective bargaining agreement is not an employment contract, and further if it were aware of such cases why they are not dispositive of the issue.

*Id.* at 844. The court went on to say that "as commonly assumed," § 502(b)(7) limits the claims of key executives, not members of the rank and file of unions. *Id.* Finally, the court concluded that the withdrawal liability claim at issue in the case was not limited by this section because the section limits claims of employees rather than claims of an entity such as the pension trust fund.

Both lines of authority are appealing for different reasons. This court, however, chooses to follow *Gee & Missler.* The facts of this case demonstrate the difference between a collective bargaining agreement and an employment contract. Here, there was no "termination of an employment contract." Indeed, many if not most

of U.S. Truck's employees continued to be employed after the rejection of the Agreement. The damages do not stem from the "termination" of employment. As discussed *supra,* those employees who were terminated could not receive damages unless they were terminated in violation of the collective bargaining agreement. It is the rejection of the collective bargaining agreement, not the termination of the contract of employment between an individual employee and U.S. Truck, that gives rise to the damages. Section 502(b)(7) therefore does not apply to the damages arising here.

### IV.

A final question relates to the bankruptcy court's holding that U.S. Truck is liable for its failure to deduct Union dues from employees' paychecks and remit the dues directly to the Union. U.S. Truck contends that since the Agreement was rejected, it was not obligated to deduct the dues. In addition, U.S. Truck argues that the damages award in this regard is inequitable: the employees are receiving a windfall, and it is paying the amount equal to the dues a second time.

As related above, a claim in bankruptcy arises by analogy to the claim that would have arisen had bankruptcy not been declared. *See, supra.* Here, had bankruptcy not occurred, U.S. Truck would have been obligated to withhold the dues from the wages it paid its employees. Had it engaged in this conduct absent the bankruptcy, § 301 of the LMRA would have provided a cause of action for a compensatory damages award in the amount of the dues which should have been remitted. *International Brotherhood of Electrical Workers Local No. 12 v. A-1 Electric Service,* 535 F.2d 1 (10th Cir.1976); *Food Handlers Local 425 v. Valmac Industries,* 528 F.2d 217 (8th Cir.1975); *Bugher v. Consolidated X-Ray Service Corp.,* 515 F.Supp. 1180 (N.D.Tex.1981), *aff'd* 705 F.2d 1426 (5th Cir.1983).

U.S. Truck contends that once the Agreement was rejected, it could not lawfully deduct money from the employees' pay. As authority, it points to M.C.L. § 408.477

which prohibits such deductions with "the exception of those deductions required or expressly permitted by law or by a collective bargaining agreement." First, the force of U.S. Truck's argument is limited by the fact that U.S. Truck resumed deducting union dues from wages one year after the Agreement's rejection. Finding of Fact 53, 74 B.R. at 526.

Second, even if this prohibition applies to the instant case, U.S. Truck was not without recourse. Instead of totally rejecting the Agreement, U.S. Truck could have assumed that portion of the Agreement relating to deduction of dues. The court in *In Re Lane County Sheriff's Officers Ass'n,* 16 B.R. 190 (Bankr.D.Ore.1981), held that in rejecting a collective bargaining agreement, the contract was severable. Such a course of action could have been taken here. The interest of U.S. Truck was to "avoid the burdens of the contract," not to terminate the working relationship between it and the Union.

U.S. Truck's argument that it must pay the amount equal to the union dues twice, thereby creating a windfall to the employees, is of no avail. *Local 9, Int'l Union of Operating Engineers v. Siegrist Constr. Co.,* 458 F.2d 1313, 1316 (10th Cir.1972) (trust funds are for benefit of all union employees and has been depleted by failure to pay). Nor is the Union under any duty to mitigate its damages by collecting the dues from the employees directly. *Valmac Industries, supra,* 528 F.2d at 219.

Here, however, the court has awarded rejection damages to individual employees as well as to the Union for the lost dues. It is these same employees that actually owe the dues. The court believes that the proper course here is to remand the case and order the bankruptcy court to amend its judgment. The court below shall deduct the union dues from each individual employees' damages awards. The Union will still receive the union dues which have not been paid. The employees, who undisputedly owe the dues, will be paying them, however, rather than U.S. Truck.

### V.

In summary, the court holds that the Committee has standing to bring the claims of its members against U.S. Truck. Rejection damages include the wages lost by employees due to wage reductions after the rejection of the Agreement. These lost wages are not limited by 11 U.S.C. § 502(b)(7). Finally, the case is remanded, and the bankruptcy court is ordered to deduct the union dues from the employees' individual damages awards.

IT IS SO ORDERED.