## In re ALTAIR AIRLINES, INC., Debtor.

### Bankruptcy No. 82–05399G.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 7, 1982.

Nathan B. Feinstein, Philip A. Gasteier, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., and Bruce H. Simon, Cohen, Weiss & Simon, New York City, for applicant, Air Line Pilots Ass'n, Intern.

Howard T. Glassman, Wexler, Weisman, Forman & Shapiro, P.C., J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for debtor, Altair Airlines, Inc.

### OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

This is a case of first impression. The issue at bench is whether the Association which is the collective bargaining representative of the airline pilots employed by the debtor can be appointed to the official committee of unsecured creditors mandated by section 1102(a)(1) in all chapter 11 proceedings. We conclude that the collective bargaining representative cannot be so appointed because: (1) it is not a "creditor"

within the meaning of section 101(9) of the Bankruptcy Code ("the Code"); and (2) it does not have a "claim" against the debtor within the meaning of section 101(4) of the Code.

The facts of the instant case are as follows [1]: On November 9, 1982, Altair Airlines, Inc. ("the debtor") filed a petition for reorganization under chapter 11 of the Code. Since the debtor did not list as one of its ten largest creditors the Air Line Pilots Association, International ("the Association") the court neither considered nor appointed said Association for membership on said committee. Whereupon, on November 18, 1982, the Association filed an application seeking appointment to said committee. The Association is the exclusive collective bargaining representative of the pilots employed by the debtor under the terms of the collective bargaining agreement in effect between the debtor and the Association. Counsel for the debtor has strenuously objected to the inclusion of the Association on the committee of unsecured creditors. The *aggregate* amount of the wage claims of the pilots who are members of the Association (approximately eighty-eight in number) is in excess of $676,120.00 which amount would, if the Association was found to be a "creditor" that had a "claim" against the debtor within the meaning of the Code, place the Association in second place on the debtor's list of "Ten Largest Creditors." However, none of the *individual* wage creditors would qualify as one of the debtor's ten largest unsecured creditors.

Section 1102 of the Code provides:

§ 1102. Creditors' and equity security holders' committees.

(a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of *creditors* holding unsecured claims.

(2) On request of a party in interest, the court may order the appointment of additional committees of *creditors* or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The court shall appoint any such committee.

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest *claims* against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the order for relief under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented (emphasis added).

\*        \*        \*        \*        \*        \*

U.S.C. § 1102.

■ We find it dispositive that the definition of the term "creditor" found in section 101(9) of the Code differs significantly from the definition of "creditor" prescribed in section 1(11) of the Bankruptcy Act. Section 101(9) of the Code provides:

(9) "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim. U.S.C. § 101(9).

Section 1(11) of the Act provided: [2]

(11) "Creditor" shall include anyone who owns a demand, or claim provable in bankruptcy, *and may include his duly authorized agent, attorney, or proxy* (emphasis added).

*Collier on Bankruptcy,* in its general analysis of section 101 of the Code, points out that:

It will also be noted that some of the definitions in this section read "means", while others read "include." Those stating a definition in terms of "means" *at-*

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979.

*tempt a precise definition.* But it was not intended that definitions of words used in the Code which read "includes" and "including" should exclude other meanings or definitions of the word or limit ordinary and well understood meaning (emphasis added).

2 *Collier on Bankruptcy,* ¶ 101.01[2] at 101–12 (15th ed. 1982). *See also* Rules of Construction, 11 U.S.C. § 102(3). Collier's states further:

A difference in legislative intent as to the scope of the definition is evidenced by the terms in which each definition is couched. Section 101(9) reads, "Creditor means", while under the Act the term read to "include". The absence of further definitions of "creditor" throughout the Act is further support for the conclusion that such definition is precise and controlling.

2 *Collier on Bankruptcy,* ¶ 101.09 at 101–20 (15th ed. 1982). Consequently, we are bound by Congress' obvious intention to exclude from the present definition of "creditor" under the Code any language empowering a *"duly authorized agent, attorney, or proxy"* of an entity that has a claim against the debtor to be considered a creditor, in and of itself, of the debtor[3]. Therefore, we conclude that the Association, being only the authorized agent of the "entity that has a claim against the debtor" —namely, the individual pilots—is not a creditor within the meaning of section 101(9) of the Code.

Section 101(4) of the Code defines the term "claim" as follows:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(4).

While it is clear to us that the pilots, as individuals, have a "right of payment" against the debtor, no evidence has been presented which indicates that the Association has a right of payment against the debtor[4].

We are mindful that labor organizations have, in the cases cited by the Association, been appointed to the committees of unsecured creditors. However, in those cases, the issue of the Association's right to serve on the committees does not appear to have been considered by the courts. Certainly, there was no objection raised by the debtors as in the case at bench. Consequently, based on all the above, we will deny the Association's application for appointment to the official committee of unsecured creditors.

**3.** *See Nathanson v. National Labor Relations Board,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (National Labor Relations Board is a creditor within the meaning of the Bankruptcy Act with respect to back pay awards ordered by the Board to be paid by the bankrupt to certain employees because the Board is the public *agent* chosen by Congress to enforce the National Labor Relations Act). *See also National Labor Relations Board v. Killoren,* 122 F.2d 609 (8th Cir.1941).

**4.** Collier's interprets § 101(4)(B) as follows:
The definition ["claim"] also includes breach of an equitable right to performance which gives rise to a right of payment. The intended result is that a liquidation or estimation of a contingent right of payment for which there may be an alternative remedy makes

the equitable claim dischargeable in bankruptcy. For example, in some states, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event the creditor entitled to specific performance would then have a "claim" for the purpose of a case under title 11.
On the other hand, rights to an equitable remedy for breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" within the Code's contemplation, and would not therefore be dischargeable in bankruptcy, unless such obligations could be translated into a claim for damages if breached.
Collier on Bankruptcy, ¶ 101.04 at 101–15. (15th ed. 1982).