In re ALTAIR AIRLINES, INC.

**Appeal of AIR LINE PILOTS ASSOCIATION, INTERNATIONAL.**

No. 83–1483.

United States Court of Appeals,
Third Circuit.

Argued Jan. 26, 1984.

Decided Feb. 14, 1984.

Rehearing Denied March 26, 1984.

Bruce H. Simon (Argued), Richard M. Seltzer, Babette A. Ceccotti, Cohen, Weiss & Simon, New York City, for Air Line Pilots Ass'n International.

Leon S. Forman (Argued), Howard T. Glassman, Wexler, Weisman, Forman & Shapiro, P.C., Philadelphia, Pa., for Altair Airlines, Inc.

Before GIBBONS and BECKER, Circuit Judges, and DUMBAULD, District Judge.*

**OPINION OF THE COURT**

GIBBONS, Circuit Judge:

Air Line Pilots Association, International (ALPA) appeals from an unreported order of the District Court for the Eastern District of Pennsylvania, affirming a decision of the Bankruptcy Court denying ALPA's application for appointment to the Committee of Unsecured Creditors of Altair Air-

---

* Hon. Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

lines, Inc., debtor.[1] This court has jurisdiction under 28 U.S.C. § 1293(b). ALPA is the bargaining representative of pilots employed by the debtor. Unpaid wages are due those pilots under the terms of the collective bargaining agreement between ALPA and the debtor. The Bankruptcy Court and the District Court held that under the Bankruptcy Code ALPA was not a creditor and hence was not entitled to membership on the creditors' committee. We reverse.

## I.

On November 9, 1982, the debtor, a common carrier airline, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* ALPA was the exclusive bargaining agent for eighty-eight pilots who on the date of filing were owed $676,120 in unpaid wages and benefits. This sum, in the aggregate, amounts to the second largest unsecured claim against the debtor. ALPA also has a claim for unpaid union dues withheld from pilot wages. On November 18, 1982, ALPA filed an application for appointment to the Committee of Unsecured Creditors.[2] The debtor opposed the application, urging that ALPA is not a "creditor[ ] holding unsecured claims" within the meaning of 11 U.S.C. § 1102(a), because the unpaid wages were due to individual union members, and the union dues claim was for a small amount. The debtor also urged that ALPA would be a disruptive influence, since the best prospect for reorganization might be a merger or joint venture with a non-union common carrier.

The Bankruptcy Judge denied ALPA's application, holding that it was not a creditor within the meaning of 11 U.S.C. § 101(9) and did not hold a claim within the

meaning of 11 U.S.C. § 101(4). That court reasoned that the Bankruptcy Code, in contrast with the 1898 Bankruptcy Act, no longer included in the definition of creditor a "duly authorized agent, attorney, or proxy." Thus ALPA could not act as an agent of its creditor members. As to the meaning of "claim", the Bankruptcy Judge reasoned that the "right of payment" referred to in section 101(4) did not include ALPA's rights under its collective bargaining contract.

The District Court affirmed, relying on dicta in *Matter of Schatz Fed. Bearings Co.,* 5 B.R. 543, 546 (Bkrtcy.S.D.N.Y.1980) that while a union could serve on a Creditors Committee as a representative for unpaid pension benefit claims, it could not so serve on behalf of unpaid wage claims. The District Court did not rely on the Bankruptcy Court's agency reasoning.

## II.

Eligibility for service on a Creditors' Committee depends upon status as a "creditor[ ] holding unsecured claims." 11 U.S.C. § 1102(a)(1). This section cross-references to the definitional provisions of the Code. 11 U.S.C. § 101. Section 101(9) defines a creditor as

> (A) [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.

An "entity" is defined as "a person, estate, trust, [or] governmental unit." 11 U.S.C. § 101(14). A "person" is defined as an "individual, partnership, [or] corporation, ...." 11 U.S.C. § 101(30). Finally a "corporation" includes an "unincorporated company or association." 11 U.S.C. § 101(8)(a)(iv).

---

1. The Bankruptcy Court opinion is reported. 25 B.R. 223 (Bkrtcy.E.D.Pa.1982).

2. ALPA is a member of the Creditors' Committee in Braniff Airways, Inc., Debtor No. 48,-00368, 369F (N.D.Texas). Labor organizations are sitting on Creditors' Committees in a number of other bankruptcy proceedings. MFX Inc., No. 82-04944K (E.D.Pa.); Fowler & Williams, No. 5-81-0642G (M.D.Pa.); Spector Red Ball, Inc., No. 5-82-80329T (W.D.Texas); Hemingway Transport, Inc., No. 82-01340,341JG (D.Mass.); Boss Linco Lines, Inc., No. 82-10182M (W.D.N.Y.). See also *Matter of Liberal Market, Inc.,* 11 B.R. 742, 744 (Bkrtcy.S.D. Ohio 1981) (ordering union representation on Creditors' Committee without discussion of issue).

■ ALPA is an unincorporated association, 29 U.S.C. § 185(b). Thus it is an entity within the meaning of 11 U.S.C. § 101(9). The remaining question is whether it "has a claim against the debtor." A "claim" is a

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(4). The existence of a "right to payment" is determined, obviously, by the law governing the transaction between the alleged claimant and the debtor. In the case of a collective bargaining agreement in or affecting interstate commerce, that law is federal common law. 29 U.S.C. § 185(a). *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Under that law ALPA may bring suits to enforce the terms of a collective bargaining agreement, including suits to recover unpaid wages or vacation pay. *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *New Mexico Dist. Council v. Mayhew Co.,* 664 F.2d 215, 218–19 (8th Cir.1981).

■ The debtor urges that while federal common law permits a union to sue to enforce a collective bargaining agreement, that law does not authorize the union to "collect" the wages, but only to cause them to be passed through to its members. That distinction is entirely too metaphysical to serve as a guide for construction of the Bankruptcy Code.[3] Congress has recognized estates and trusts as persons, and thus as entities having claims against debtors. The representative capacity of such fiduciaries is essentially no different, for purposes of participation in a Creditors' Committee, than the representative capacity, under federal common law, of a labor organization.

The debtor also urges that ALPA has no claim because the debtor did not "breach" the collective bargaining agreement. Rather, it contends, the failure to pay in accordance with the terms of that agreement resulted, upon the filing of its Chapter 11 petition, by operation of law. This argument is frivolous. The Bankruptcy Code suspends payments to unsecured creditors upon the filing of a petition, but recognizes that they have claims. In this respect ALPA's claim is no different that of any unpaid contract creditor. The wages which should have been paid are unpaid, just as fuel bills and bank loans are unpaid.

Nor are we impressed by the policy argument relied on by the debtor in support of the Bankruptcy Judge's construction of the governing statutory provisions. Undoubtedly ALPA's members may be interested in a plan of reorganization which preserves both their jobs and their collective bargaining agreement, while other creditors may be interested in liquidation, or a reorganization involving a merger with a non-union airline. Such conflicts of interest are not unusual in reorganizations. Materialman creditors, for example, may sometimes prefer to forego full payment for past sales in hopes of preserving a customer, while lenders may prefer liquidation and prompt payment. Section 1103(c)(2) contemplates that the Creditors' Committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, *and the desirability of the continuance of such business* . . . ." (emphasis supplied). There is no reason why the voice of the collective bargaining representative should be the one claimant voice excluded from the performance of that statutory role. The Bankruptcy Code has been said to be "in tension with our national labor policy, as expressed in the National Labor Relations Act." *In re Bil-*

---

**3.** To the extent that dicta in *Matter of Schatz Federal Bearings Co., Inc.,* 5 B.R. 543, 545 (Bkrtcy.S.D.N.Y.1980) suggests otherwise we decline to follow it.

*disco,* 682 F.2d 72, 77–8 (3d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983). But that tension does not suggest that collective bargaining representatives should have no role in the reorganization process. Quite the contrary; resolution of the tension suggests that those representatives should be heard in appropriate cases. Clearly a case in which unpaid sums due under a collective bargaining agreement amount to the second largest unsecured claim against the debtor's estate is an appropriate case.

Because we hold that a collective bargaining representative has a "right to payment" of unpaid wages within the meaning of 11 U.S.C. § 101(4), and thus is a creditor within the meaning of 11 U.S.C. § 1102(a)(1), we need not address ALPA's alternative argument that in any event 11 U.S.C. § 1102(c) authorizes its designation as a representative of the employee claimants.

### III.

The judgment affirming the decision of the Bankruptcy Court will be reversed, and the case will be remanded to the District Court for the entry of an order directing the Bankruptcy Court to grant ALPA's application for appointment to the Committee of Unsecured Creditors.[4]

**UNITED STATES of America, Appellee,**
**v.**

**Edward Lester SCHRONCE,**
**Jr., Appellant.**

**No. 83–5089.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1983.

Decided Feb. 16, 1984.

Certiorari Denied May 21, 1984.
See 104 S.Ct. 2395.

William R. Vassar, Charlotte, N.C., for appellant.

Kenneth P. Andresen, Chief Asst. U.S. Atty., Charlotte, N.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C., on brief), for appellee.

Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.

---

**4.** While appointment pursuant to section 1102 (c), which allows for appointment of members "representative of the different kinds of claims or interests to be represented" is within the discretion of the trial court, section 1102(b) allows no such discretion. It states that the committee "shall ordinarily consist of the persons, willing to serve, that hold the seven

SPROUSE, Circuit Judge:

Edward Lester Schronce appeals from his conviction for unlawful possession of an unregistered firearm and unlawful possession of an illegally manufactured firearm in violation of 26 U.S.C. § 5861(c) and (d) (1976). The firearm was an automatic rifle that had been converted from a semi-automatic rifle. He was convicted by a jury and sentenced by the court to a single term of three years' imprisonment (suspended), fined $3,000.00, and placed on three years' probation.

On Saturday, May 23, 1981, the Gaston County Police Department had established a traffic checkpoint on Pine Street, Gastonia, North Carolina, after receiving complaints from area residents about reckless driving and sporadic shooting in the neighborhood. Early that morning, Detective Patrick Ramsey of the Gastonia County police force stopped a Pinto automobile there for a routine registration and license check. Schronce was a passenger in the Pinto. As the driver searched for her vehicle registration and driver's license, Detective Ramsey shone his flashlight into the back seat where he spotted a .45 caliber pistol and the barrel of what appeared to him, based on his experience with high-powered weaponry,[1] to be an AR–15 rifle protruding from underneath a jacket. Both weapons were in reach of Schronce, who was turned slightly sideways in the passenger seat towards the driver. Ramsey asked the driver to get out of the car and told her that he was going to take the weapons from the back seat to ensure his own safety and that of the five other officers in the vicinity. Once he had the AR–15 in hand, he observed that it appeared to have been altered to fire automatically. A functional check by the officer confirmed his suspicion—the rifle indeed had been converted from a semi-automatic to an automatic weapon. At this juncture, Schronce told Detective Ramsey that the AR–15 was his. Ramsey asked Schronce if there were any other weapons in the automobile; Schronce responded that he had a pistol in the glove compartment. Ramsey removed the pistol and arrested Schronce for carrying a concealed weapon. The issues on appeal relate only to his conviction for possession of the AR–15.

Before trial, Schronce filed a motion to suppress the AR–15 seized in the May 23, 1981 encounter at the traffic checkpoint. The district court referred the motion to a magistrate, who conducted an evidentiary hearing on March 11, 1983. At the hearing, Schronce challenged the seizure of the AR–15, arguing that it was not justified under either the "plain view" doctrine or the "exigent circumstances" exception to the fourth amendment's warrant requirement. The magistrate found that Ramsey seized the AR–15 out of a legitimate concern for his own safety and that of his fellow officers, and, having lawful custody of the weapon, had a right to examine it. In her written report to the district court, dated March 17, 1983, the magistrate made proposed findings of fact and conclusions of law, and

largest claims against the debtor of the kinds represented on such committee." Under the facts of this case, any refusal to appoint the appellant to the creditor's committee would be an abuse of discretion.